UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
:
:
:
:
:
: 17-cv-4502-ARR
:
In re RIENZI & SONS, INC. : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
:
: ORDER
:
:
:
---------------------------------------------------------------------- X

ROSS, United States District Judge:

Alma Bank, a creditor of Rienzi & Sons, Inc., brings this appeal from a final order of the United States Bankruptcy Court for the Eastern District of New York. For the reasons discussed below, I hold that the bankruptcy court did not abuse its discretion in denying Alma Bank's motion to reopen the bankruptcy case. I therefore affirm.

## BACKGROUND

Rienzi & Sons, Inc. is an Italian foods company. Alma Bank is a creditor of Rienzi & Sons and its principal, Michael Rienzi (collectively, "the debtor"). In 2011, the bank made two loans to the debtor, one for $3,500,000 (the "3.5M Note"), R. at 223,[1] and one for $1,000,000 (the "1.0M Note"), id. at 252. These loans were secured by two mortgages on 18-81 Steinway Street, Queens, NY, 11105, referred to here as the 3.5M Mortgage and the 1.0M Mortgage. Id. at 197, 218, 230. As described below, the debtor agreed to reimburse the bank for any attorney's fees or other expenses it might incur in enforcing its rights under the loans.

---

[1] All citations to the record can be found at ECF No. 2-1.

1

The 1.0M Note states that "[s]hould the indebtedness evidenced hereby or any part be collected . . . in bankruptcy" or "should this Note be placed in the hands of attorneys for collection upon default, the Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect such indebtedness, including reasonable attorneys' fees and expenses." Id. at 253. The 1.0M Mortgage echoes this, stating that if Alma Bank is made party to an action by reason of the mortgage, Rienzi & Sons must pay the bank's litigation expenses, including legal fees, with interest. Id. at 234. In such a situation, "[a]ll such sums paid [by the debtor] and the interest thereon will be immediately due and payable" to Alma. Id. The 3.5M Note also states that "[s]hould the indebtedness represented by this Note or any part thereof be collected . . . in bankruptcy . . . or should this Note be placed in the hands of attorneys for collection upon default, the Borrower agrees to pay . . . all costs of collection or the attempt to collect such amounts due under this Note, including reasonable attorneys' fees and expenses." Id. at 226. Under the 3.5M Mortgage, Rienzi & Sons must reimburse the bank for expenses arising out of the "indebtedness evidenced by the Note," id. at 207, and must "punctually pay the principal and interest and all other sums evidenced by the Note," id. at 201.

In March 2015, Rienzi & Sons filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Voluntary Petition, Case No. 1-15-40926-NHL, ECF No. 1; see also 11 U.S.C. § 1101 et seq. It proposed the final version of its plan of reorganization ("the Plan") in April 2016. R. at 124. The Plan left the debtor's obligations to the bank largely intact, but, for each note, increased the interest rates from 5.5% to 6%, increased any existing prepayment penalties by 1%, and extended the time in which the loans could be repaid with no prepayment penalty to December 31, 2016. Id. at 135, 138. In addition, the Plan provided that the 1.0M Note would be amortized over a three-year period, with principal and interest paid monthly. Id. at 135. The 3.5M Note (on which Rienzi & Sons owed approximately $3,100,00) would be paid directly through rent payments received from Rienzi &

2

Sons on the mortgaged property at 18-81 Steinway Street. Id. at 137. Although the 3.5M Note was still secured by that property, the Plan made that security interest subject to the all of the debtor's other obligations under the Plan—effectively making it subordinate to all other claims. Id. The bankruptcy court confirmed the Plan in May 2016. Order Confirming the Debtor's Amended Plan of Reorganization Dated April 13, 2016 Under Bankruptcy Code Section 1129 and Bankruptcy Rule 3020, Case No. 1-15-40926-NHL, ECF No. 298.

In late 2016, a dispute arose when the bank sent Rienzi & Sons a bill for $111,316.63 in legal fees, purportedly incurred in enforcing its rights under the 1.0M and 3.5M Notes. R. at 184, 192. The debtor asked the court to bar the bank from collecting attorneys' fees, arguing that the bank had waived any such right under the Plan. Id. at 184. Specifically, the debtor argued that the Plan's definition of an "Allowed Claim" excluded attorneys' fees by default. Id. at 188. That definition stated that "[e]xcept as otherwise provided in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim . . . shall not include . . . any award or reimbursement of attorneys['] fees or related expenses or disbursements." Id. at 188-89 (citing id. at 127). According to the debtor, this meant that "unless the Plan or a Bankruptcy Court Order provides, an Allowed Claim . . . does not include either interest or attorneys' fees." Id. at 189. The Plan provided that the interest rates on the 1.0M and 3.5M Notes would increase from 5.5% to 6%, but did not mention attorneys' fees. See id.[2] In the alternative, the debtor argued that Alma Bank had not provided sufficient proof that the fees requested were reasonable. Id.

That December, the debtor and Alma Bank reached an agreement on the fee issue, memorialized in a stipulation modifying the Plan. Id. at 17. The Stipulation extended the time in

---

[2] The Plan listed modifications only to the 1.0M and 3.5M Notes, so the failure to mention attorneys' fees presumably meant only that any attorneys' fees provisions in the Notes remained unchanged. Id. 135, 137. In other words, the Plan did provide for an award of attorneys' fees because it suggested that the 1.0M and 3.5M Notes were modified only in the ways laid out in the Plan.

3

which the debtor could repay its loans to the bank without prepayment penalty from December 31, 2016 to February 28, 2017. Id. at 18, 21. The debtor agreed that, if it paid the outstanding principal and interest by February 28, it would "also pay to Alma Bank a total of $100,000 on account of attorneys' fees, late fees, and mortgage recording tax fees." Id. at 18-19. These fees would be due by February 28 as well. Id. Collectively, the principal, interest, and fees, are referred to as the prepayment requirements in the Stipulation. Id. at 19, 21. The Stipulation provided that, if the prepayment requirements were "not fully satisfied by the end of February 28, 2017," then the debtor would have no right to repay their loans without prepayment penalty. Id. at 19, 22. In addition, the debtor would "owe Alma Bank $185,911.88 on account of attorneys' fees, late fees, and mortgage recording tax fees, . . . plus all fees, charges, costs, disbursements, attorneys' fees allowed to Alma Bank under the Loan Documents for the period after December 16, 2016." Id. at 20, 22.[3] Finally, by March 3, 2017, the debtor would "deliver to Alma Bank copies of all [of its] financial information" that it had "provided to prospective lenders prior to February 28, 2017." Id.

The parties discussed the proposed stipulation at a hearing in front of the bankruptcy judge in late December. Id. at 27, 36-50. During that hearing, the judge restated her understanding of the Stipulation. In her words, Alma Bank had sought $185,911.88 in fees as of the date of the hearing, which it was willing to resolve "for $100,000, as long as the principal balance plus interest, whatever that is, plus the $100,000 is paid on or before February 28, 2017." Id. at 49. If, however, "the monies [were] not paid on or before February 28, 2017, basically all bets are off. And . . . the amount when [the debtor does] pay it off is going to be either principal balance plus whatever the interest is, plus

---

[3] The Stipulation defines the "Loan Documents" as the "a.) Restated Mortgage Note, for the principal sum of $3,500,000.00, dated July 11, 2011," "b.) Mortgage Consolidation and Extension Agreement, for the principal sum of $3,500,000.00 dated July 11, 2011, . . . affecting the premises known as 18-81 Steinway Street, Astoria, New York 11105; c.) Commercial Revolving Credit Line Note, for the principal sum of $1,000,000.00 dated October 13, 2011," and "d.) Commercial Revolving Credit Line Mortgage, for the principal sum of $1,000,000.00, dated October 13, 2011, . . . affecting the premises known as 18-81 Steinway Street, Astoria, New York 11105, as modified by the Plan." Id. at 17-18.

4

the $185,911.88, plus additional fees and interest in expenses that ran from Friday last, plus the prepayment penalty." Id. The parties did not object to this description of the agreement, although when the court stated that "the plan will be amended as we discussed," counsel for the debtor clarified that "[t]he stipulation will provide for the amendment of the plan." Id. at 50. After the hearing, the Stipulation was "so ordered" by the bankruptcy court and the case was closed. Id. at 26; Final Decree and Order Closing Case, Case No. 1-15-40926-NHL, ECF No. 353.

The debtor did not meet the prepayment requirements by February 28, 2017. Roughly two months later, Alma Bank sent the debtor a letter stating that "the enforcement expenses" and financial information were past due. Id. at 59-63. The letter also said that if the debtor did not meet these requirements, it would be in default of the 3.5M Note and Mortgage and that it already was in default of the 1.0M Note and Mortgage. Id. at 62-63 According to the bank, "[p]aragraph numbered '1(h)' of each of the $3.5mm Mortgage and $1.0mm Mortgage provides that Enforcement Expenses 'and the interest thereon will be immediately due and payable.'" Id. at 62.[4] And paragraphs 2(a) of those same documents define an "event of default" as the "failure of the Mortgagor to make any payment under this Mortgage or the Note, when due." Id. at 62. Under the bank's logic, the debtor was in default because the debtor had failed to pay the enforcement expenses, which the bank claimed were immediately due and payable. Id.

In May 2017, Alma Bank moved to reopen the bankruptcy case, demanding $185,911.88 in fees from the debtor. Id. at 4. According to the bank, the debtor was in default of its obligations under the loan documents and the Plan, because the enforcement expenses were "due and payable immediately" and because the debtor had refused to provide the required financial information." Id. at 9. The bank therefore invoked its rights under the Plan, in the event of a default, to "commence

---

[4] The 1.0M Mortgage does says that litigation expenses incurred during proceedings related to the mortgage "will be immediately due and payable." Id. at 234. The 3.5M Mortgage, however, does not—it says that the "principal and interest and all other sums" must simply be paid "punctually." Id. at 201.

5

and prosecute in the Bankruptcy Court foreclosure proceedings and exercise Alma Bank's rights under the Loan Documents." Id. at 11. The debtor opposed the motion to reopen. Id. at 68. It argued that it would be futile to reopen the case, as it was not in default of the Plan—the attorneys' fees were not yet due and the financial information had already been provided. Id. at 75. It also argued that the equitable factors commonly considered by courts did not weigh in favor of reopening the case. Id. at 70, 73-75.

The bankruptcy court denied the motion to reopen the case at a hearing in July 2017. Id. at 313. Specifically, it held that there was no cause to reopen, because it found that the debtor had not defaulted on its obligations under the Stipulation. Id. at 310-11; see also id. at 278 (order denying motion to reopen).

The bankruptcy court found that the debtor had satisfied its obligation to turn over any financial information it had supplied to potential lenders. See id. at 302. The debtor had given Alma Bank their audited financial statement, but the bank believed that they must have provided other documents to potential lenders. Id. at 289, 301. The bank acknowledged, however, that this was simply "supposition," based on the fact that banks frequently ask for other information from potential borrowers. Id. at 289. The debtor clarified that the potential lender had only required it to provide the audited financial statement because the potential lender already had an existing relationship with the debtor. Id. at 301. The bankruptcy court therefore found that there had been no default on this point, as the testimony indicated that the debtor had fulfilled its obligation under the Stipulation to provide Alma Bank with any financial information it had supplied to potential lenders. See id. at 301-02.

In addition, the bankruptcy court found that the debtor did not have an obligation to pay the $185,911.88 in fees on March 1. Id. at 297. The court based this finding on a number of factors. The court underscored that the language of the Stipulation did not say when the payment had to be made.

6

Id. at 290. If the debtor had paid the principal and interest on its loans by February 28, then it also had to "pay" Alma Bank $100,000. Id. at 307. But if the debtor did not pay the principal and interest by February 28, then it "owe[d]" Alma Bank $185,911.88. Id. The court understood this distinction—between paying and owing—to mean that the debtor was not required to pay the $185,911.88 on March 1. Id. Instead, it would owe that money in the same way it owed the rest of the principal and interest on the loan, on which it was making ongoing payments. Id. at 292-93, 307. In the court's understanding, the debtor was not under an obligation to pay the fees until the loan itself was paid off. Id. at 306-07. To the bank's argument that the Stipulation incorporated a requirement from the mortgage documents that the fees be due immediately, the bankruptcy court said that the $185,911.88 was never defined as the type of fee that would be "immediately due and payable" under the 1.0M Mortgage. Id. at 290-95; see also id. at 234. Finally, the bankruptcy court pointed out that it never would have approved the Stipulation if it understood it to mean that the $185,911.88 was due and payable on March 1, as it would make no sense to require the debtor to pay what would amount to an $85,000 penalty for failing to prepay its loan a day earlier. Id. at 291, 307-09.

Alma Bank then appealed the bankruptcy court's denial of its motion to reopen. Id. at 327.

## DISCUSSION

District courts have jurisdiction to hear appeals from final judgments, orders or decrees of the bankruptcy court in their judicial district. 28 U.S.C. § 158(a)(1). The "decision whether to reopen [the] debtor's case is committed to the sound discretion of the bankruptcy court." In re I. Appel Corp., 300 B.R. 564, 567 (Bankr. S.D.N.Y. 2003) (quoting Horizon Aviation of Va., Inc. v. Alexander, 296 B.R. 380, 382 (Bankr. E.D. Va. 2003)), aff'd, 104 Fed. App'x 199 (2d Cir. 2004); see also In re Chalasani, 92 F.3d 1300, 1307 (2d Cir. 1996); In re Arana, 456 B.R. 161, 171 (Bankr. E.D.N.Y. 2011) ("Bankruptcy courts have broad discretion when deciding whether to reopen a closed case."). This is because such a decision invokes the bankruptcy court's equitable powers, the exercise of "which is

dependent upon the facts and circumstances of each case." In re Chalasani, 92 F.3d at 1307 (citations omitted). A court abuses its discretion if it "its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or . . . its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001).

The bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Any party in interest may move to reopen a bankruptcy case. Fed. R. Bankr. P. 5010. The Bankruptcy Code does not define cause or "provide any specific criteria to guide the determination of whether to reopen" a closed case, but "courts typically examine the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors." In re I. Appel Corp., 300 B.R. at 571. The bankruptcy court should only reopen a case when "relief may ultimately be afforded to a party," not when it would be "futile or a waste of judicial resources." In re Galloway-O'Connor, 539 B.R. 404, 407 (Bankr. E.D.N.Y. 2015) (quoting In re Mohammed, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015)). The moving party has the burden of establishing that there is cause to reopen the case. In re Arana, 456 B.R. at 171.

The bankruptcy court did not abuse its discretion when it denied Alma Bank's motion to reopen the case. Its decision—that reopening the case would be futile because there had been no breach of the Stipulation—did not rest on a clearly erroneous factual finding or on an error of law. On the contrary, it was well within the range of permissible decisions.

The bankruptcy court based its decision not to reopen the case on its finding that the debtor had not defaulted on the Stipulation. It is undisputed that the debtor did not pay Alma Bank $185,911.88 on March 1—the parties' disagreement turns solely on whether such a payment was required by the Stipulation. The bankruptcy court's decision cannot be upheld if it was based on a

8

legal error. I hold that it was not error for the bankruptcy court to conclude that there had been no breach of the Stipulation.

A bankruptcy court's interpretation of its own ambiguous order is entitled to deference. See In re Casse, 198 F.3d 327, 333 (2d Cir. 1999) (holding that "if a bankruptcy order of dismissal is ambiguous [as to what claims were dismissed with prejudice], the bankruptcy court's interpretation of its own order 'warrants customary appellate deference'" (quoting In re Tomlin, 105 F.3d 933, 941 (4th Cir. 1997))); see also In re Mountain Laurel Resources Co., 258 B.R. 652, 658 (S.D. W. Va. 2001) (holding that bankruptcy court's interpretation of the settlement agreement it approved was entitled to "substantial deference"). Alma Bank argues that because the bankruptcy court did not generate the Stipulation itself, its interpretation does not deserve any deference. Appellant's Reply Br. 2, ECF No. 5. This argument is unpersuasive. Casse does not hold that deference is inappropriate when a bankruptcy court interprets an agreement it approved. The bank attempts to downplay the court's involvement by stating that its "'sole role' was 'so ordering' the Stipulation. . . . Nothing more." Appellant's Reply Br. 2. But the bankruptcy court only so ordered the Stipulation after a lengthy hearing and with the benefit of its extensive history with the case. R. at 27-52. As the district court observed in In re Mountain Laurel Resources Co., a bankruptcy court that has been "directly engaged in the earlier proceedings" has "a better vantage point to make a determination on its earlier order." 258 B.R. at 658. In that case, the bankruptcy court had so ordered the settlement agreement at issue—it had not, as Alma Bank would require here, drafted the settlement agreement itself. Id. at 655.

The Stipulation does not unambiguously require the debtor to pay the $185,911.88 on March 1. The bank's assertion that the bankruptcy court's ruling contradicts the plain meaning of the Stipulation is therefore unavailing. Appellant's Br. 12-15, ECF No. 3. The bank presents two main arguments: First, the Stipulation states that if the debtor does not pay the principal and interest by February 28, then the debtor "owe[s] Alma Bank $185,911.88." Id. at 13. But the word "owe" is

9

ambiguous—a sum may be owed immediately or it may be owed and due on a future date. Second, the 1.0M Mortgage (which the bank claims was incorporated into the Stipulation) states that if the bank was "made a party by reason of this Mortgage" to "any action or proceeding," then "all sums reasonably required to be paid by the [bank] for the expense of any litigation . . . will be paid by the [debtor]" and "will be immediately due and payable." R. at 234. As the bankruptcy court explained, however, the Stipulation does not expressly characterize the $185,911.88 as a sum that would necessarily be encompassed in by the 1.0M Mortgage and that would therefore be due immediately. Id. at 290-95.

Given the Stipulation's ambiguity, the bankruptcy court's determination was entitled to deference, provided it was reasonable. And the bankruptcy court's conclusion that there was no breach of the Stipulation was reasonable. The Stipulation uses different language to describe the debtor's obligation as to the $100,000 fee versus the $185,911.88 fee. According to the Stipulation, if the debtor had paid the loan by February 28, then it also would have had to "pay" the bank $100,000 by the same date. Id. at 307. If the debtor did not take advantage of the prepayment period, then it "owe[d]" the bank $185,911.88, just as it owed the remainder of the debt. Id. The linguistic distinction suggests that the debtor did not have an immediate obligation to pay the $185,911.88. In addition, requiring the debtor to pay an extra $85,911.88 in fees based on a one-day difference in the date of payment would be bizarre. Id. at 291, 307-10. It would, as the bankruptcy court described it, be a "gotcha"—an unreasonably harsh penalty for the debtor's failure to pay its loans off early. Id. The bankruptcy court affirmed its understanding of the Stipulation at its December hearing: it stated that if the debt was not paid by February 28, the amount "when [the debtor does] pay it off" would include the $185,911.88. Id. at 49. The bank did not, however, object or modify the language of the Stipulation to correct this supposed misunderstanding of the debtor's obligation.

## CONCLUSION

Because I find that the bankruptcy court reasonably concluded that the debtor had not defaulted under the Stipulation, I hold that the bankruptcy court did not abuse its discretion in denying Alma Bank's motion to reopen the case. Reopening the case would have been futile, as the bank could never have received the relief it desired. The bank had the burden to show that there was cause to reopen the case and it could not do so. The bankruptcy court's decision is therefore affirmed.

So ordered.

    s/ Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated: March 2, 2018
       Brooklyn, New York